## DUNCAN v. NAVASSA PHOSPHATE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

No. 1203. Submitted January 9, 1891. — Decided January 19, 1891.

The right conferred by the United States, under the Guano Islands Act of August 18, 1856, c. 164, (Rev. Stat. tit. 72,) upon the discoverer of a deposit of guano and his assigns, to occupy, at the pleasure of Congress, for the purpose of removing the guano, an island determined by the President to appertain to the United States, is not such an estate in land as to be subject to dower, notwithstanding the act of April 2, 1872, c. 81, (Rev. Stat. § 5572,) extending the provisions of the act of 1856 " to the widow, heirs, executors or administrators of such discoverer " if he dies before fully complying with its provisions.

THIS was a petition for dower in a guano island. The Circuit Court of the United States for the District of Maryland, upon the bill of a citizen of Maryland against the Navassa Phosphate Company, a corporation of New York doing business in Maryland, having appointed receivers of all its property within the jurisdiction of the court, Isabella Duncan of Baltimore, in the State of Maryland, filed in the cause a petition containing the following allegations and prayer:

"1st. That she is the widow of Peter Duncan, late of Baltimore city, in the State of Maryland, and now deceased, having been married to said Peter Duncan on December 19, 1850, and said Peter Duncan having died on January 26, 1875.

"2d. That on July 1, 1857, her late husband, said Peter Duncan, discovered a deposit of guano on an island in the Caribbean Sea, not within the lawful jurisdiction of any government and not occupied by the citizens of any government, said island being called Navassa, and lying in latitude 18° 10' north, longitude 75° west, and that on September 19, 1857, he took peaceable possession and was in occupation of said island in the name of the United States under and by virtue of the act of Congress of August 18, 1856, c. 164, (11 Stat. 119,) and did, on November 18, 1857, file his claim to said island in the Department of State of the United States, in accordance with the provisions of said act of Congress, and did afterwards furnish satisfactory evidence of his said discovery, occupation and peaceable possession to the said Department of State, and in respect to said island so discovered his assignee was declared to be entitled to the rights intended to be secured by said act.

"3d. That said Peter Duncan remained in lawful possession and was legally seized of said Island of Navassa from September 19, 1857, unto November 18, 1857 ; all of which will appear by the said claim of Peter Duncan as discoverer of said island and the affidavit in evidence thereof, on file with the records of the Department of State in Washington, D. C., certified copies whereof are filed herewith as part of this petition, and by the proclamation of the proper authorities of the United States," a certificate from the Department of State of the issue of which was also filed with the petition. Said claim and proclamation, and the substance of said affidavit, are set forth in *Jones* v. *United States, ante,* 202, 205, 206, 218.

"4th. That after remaining in possession and lawfully seized of said Island of Navassa from September 19, 1857, to November 18, 1857, as aforesaid, and which period of time was during the coverture of your petitioner, said Peter Duncan did grant and assign and convey his title and interest in said Island of Navassa to E. K. Cooper; and that by mesne assign-

ments the title to said island became vested in the Navassa Phosphate Company of New York, who now hold said island under and through the title of her late husband, said Peter Duncan, and through no other title; but does not know when said Navassa Phosphate Company became the owner of said island, or who were owners since the death of her said husband; but she avers that there was a reconveyance of said island to her husband about January 1, 1860, and a subsequent conveyance of the same by her husband to E. K. Cooper; but your petitioner has not said deeds of assignment, but believes they are in possession of the Navassa Company.

"5th. That she has never joined in the execution of any deed for said island, or in any other manner made conveyance or release of her dower interest in the same.

"6th. That she has been advised that by said act of Congress, the United States assumed jurisdiction of and over said Island of Navassa, and an heritable estate therein vested in her late husband, said Peter Duncan, from the time of his discovery and occupation of said Island of Navassa, and that, by reason of his seizin of said estate in said island during coverture, and alienation of the same without the joining of your petitioner, your petitioner did at the death of her said husband become by the common law of this land entitled to her dower interest in said Island of Navassa and of the rents and profits thereof; but by reason of legal and other impediments, and through no fault of hers, she has heretofore believed that a demand for said dower would be fruitless.

" That said island is covered largely with a deposit of guano, and the chief or entire profit of the said island consists in the sale of this guano, which constitutes a portion of the soil of said island; and she cannot ascertain in a court of law to how much and in what proportion of the said guano heretofore mined and removed by said Navassa Phosphate Company since the death of her husband she should be equitably entitled, and that all the title deeds are in possession of said Navassa Phosphate Company, and she is and has been since her widowhood unable to proceed at law for an assignment of her dower and accounts; and furthermore, said company being under

the immediate charge and control of this court, she is advised that she should ask for relief from this honorable court, which is also the proper tribunal to construe said act of Congress; and that the amount involved exceeds $5000.

"Your petitioner therefore prays that the said Navassa Phosphate Company of New York, and Thomas M. Lanahan and Walter B. McAtee, the receivers of the same, may be directed to bring into this court for the inspection of your petitioner all title deeds relating to said Island of Navassa; that they may discover, under oath, to your petitioner, the amount of guano mined and disposed of since the death of her said husband, Peter Duncan, and the net value or profit of the same; and that, to the extent of her dower interest therein, said Navassa Phosphate Company may be declared to have acted as trustee for your petitioner, and to hold the same in trust for her to the extent of her said dower interest, and may be directed to account with your petitioner and pay over to her such sum or amount as this court may find proper; and that this court may assign to your petitioner her dower in said Island of Navassa, or a gross sum as reasonable and just commutation for the same; and may grant such other and further relief as her case may require."

The Navassa Phosphate Company and the receivers demurred to the petition. The demurrer was sustained, and the petition dismissed. 35 Fed. Rep. 474. The petitioner appealed to this court.

*Mr. Victor Smith* and *Mr. D. Eldridge Monroe* for appellant.

*Mr. S. Teackle Wallis* for appellees.

MR. JUSTICE GRAY delivered the opinion of the court.

It has been decided, at the present term, that the Guano Islands Act of August 18, 1856, c. 164, (11 Stat. 119,) reenacted in Title 72 of the Revised Statutes, is constitutional and valid; and that under that act, and by the action of the President, as appearing in documents of the Department of

State, and of which this court is bound to take judicial notice, the Island of Navassa must be considered as appertaining to the United States. *Jones* v. *United States, ante,* 202.

The question now presented is whether Peter Duncan, the discoverer of the deposit of guano on that island, had such an estate or interest as to entitle his widow to dower. This question is brought before us by her appeal from a decree of the Circuit Court for the District of Maryland, dismissing on demurrer her petition against the Navassa Phosphate Company and its receivers, which prayed an assignment of dower, or an allowance of a gross sum in commutation therefor.

Duncan's only interest in the island or in the guano thereon, asserted in the petition of his widow, or shown in the public documents relating to the matter, was derived from the United States, and is defined in section 2 of the act aforesaid, which provides that "the said discoverer or discoverers, or his or their assigns, being citizens of the United States, may be allowed, at the pleasure of Congress, the exclusive right of occupying said island," "for the purpose of obtaining said guano, and of selling and delivering the same to citizens of the United States, for the purpose of being used therein," at certain rates specified.

By the subsequent sections, the President is empowered to employ the land and naval forces of the United States to protect "the rights of the said discoverer or discoverers, or their assigns, as aforesaid;" the criminal laws of the United States, and the laws regulating the coasting trade, are extended to guano islands; and nothing contained in the act is to be construed as obligatory on the United States to retain possession of the islands after the guano shall have been removed. Congress has not legislated concerning any civil rights upon guano islands; but has left such rights to be governed by whatever laws may apply to citizens of the United States in countries having no civilized government of their own.

The whole right conferred upon the discoverer and his assigns is a license to occupy the island for the purpose of removing the guano; this right cannot last after the guano is removed; and by the express terms of the act it may be ter-

minated at any time "at the pleasure of Congress." The act, as well observed by Mr. Dana in his notes to Wheaton, "secures to citizens the usufruct of unoccupied guano deposits, which they have discovered and peacefully occupied, beyond the jurisdiction of any foreign State, upon certain terms as to the sale and exportation of the guano, and stipulates for nothing beyond the usufruct while the guano remains." Wheaton's International Law (8th ed.), note 104 to § 176.

It is a matter of grave doubt, to say the least, whether such a license, if irrevocable, could be treated as creating an estate subject to dower at common law, and whether the common law upon the subject could be held to be in force in the Island of Navassa.

But it is unnecessary to decide either of those questions, because, if both of them should be answered in the affirmative, there remains the insurmountable obstacle to the petitioner's claim, that the interest of her husband, if it can possibly be considered as an estate in land, is an estate at the will of the United States, from whom it was derived, and is therefore not subject to dower at common law. Even a copyhold, which was practically an estate of inheritance, yet, because it was legally an estate at the will of the lord, was not liable to dower, except by and according to local custom. 2 Bl. Com. 132 ; 1 Scribner on Dower (2d ed.) 369.

It is argued that, even if Duncan was only a tenant at will, yet the Navassa Phosphate Company, claiming under Cooper, the original assign of Duncan, by mesne assignments, among which were a reconveyance of the island by Cooper to Duncan, and a second conveyance by Duncan to Cooper, is estopped to deny that Duncan had an inheritable estate in the island. The conclusive answer to this argument is that the petition alleges that the Navassa Phosphate Company holds the island under and through the title of Duncan, and through no other title ; and does not show that either of the two conveyances from Duncan to Cooper, or the intermediate reconveyance by Cooper to Duncan, or any of the mesne assignments under which the Navassa Phosphate Company claims, purported to be of an estate in fee, or of any other or greater interest than

the right secured by the act of Congress, and recognized by the proclamation of the President, referred to in the petition, and set forth in *Jones* v. *United States, ante,* 206. The question, argued by counsel, and upon which there is a conflict of authority, whether a grantee, accepting a deed purporting to convey a greater estate than the grantor actually had, is thereby estopped to deny, as against the grantor's widow, that he had such an estate, does not arise.

The petitioner's claim of dower is not aided by the act of Congress of April 2, 1872, c. 81, by which the provisions of the act of 1856 are "extended to the widow, heirs, executors or administrators of such discoverer, where such discoverer shall have died before perfecting proof of discovery or fully complying with the provisions of said act;" "provided, that nothing herein contained shall be held to impair any rights of discovery, or any assignment by a discoverer, heretofore recognized by the government of the United States." 17 Stat. 48; Rev. Stat. §§ 5572, 5574.

The petitioner claims, and can claim, no rights under that act, both because her husband had died before its passage, and because the assignment of his right to Cooper had been recognized by the United States in the proclamation of the President, above mentioned.

It is argued for the petitioner that the act of 1872 is "in the nature of a statutory recognition of the widow's derivative right, and the widow's only right at common law is dower."

But the statute does not purport to secure the right of the discoverer to his widow and heirs only. It mentions his "widow," who might be entitled to dower in his real estate, and to a share of his personal estate under the statute of distributions of his domicil; his "heirs," who as such would take real estate only, but as next of kin might take personal property; and his "executors or administrators," who would take personal property only, and no interest in real estate. Whether the statute intends that the whole right shall pass either to the widow, or to the heirs, or to the executors and administrators, in the order named, or that it shall be distributed among them under whatever law may regulate the succession

to his estate, according to its nature as realty or personalty, might be a question of some difficulty. But it is impossible to find in this act any manifestation of an intention of Congress that the interest of the discoverer should be subject to dower, or even that it should be considered as real estate rather than as personal property.          *Decree affirmed.*